**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

SHARON WEINSTOCK, et al.,

       Plaintiffs – Judgment Creditors,

       v.                           Civ. No. 1:23−cv−02824
                                     Honorable Matthew F. Kennelly

ISLAMIC REPUBLIC OF IRAN,

       Defendant – Judgment Debtor,

R.J. O'BRIEN LIMITED, JVMC HOLDINGS CORP.,
BRAD GIEMZA and JAMES GABRIELE,

       Citation Third-Party Respondents,

R.J. O'BRIEN & ASSOCIATES, LLC,

       Respondent.

_____/

**PLAINTIFFS' CONSOLIDATED MOTION FOR TURNOVER,**
**MOTION IN THE ALTERNATIVE TO COMPEL DISCOVERY,**
**AND OPPOSITION TO RESPONDENTS' MOTIONS TO QUASH**

**Introduction**

    This is a post-judgment citation proceeding to enforce a federal judgment in favor of the Plaintiffs-Judgment Creditors ("Plaintiffs") against the Islamic Republic of Iran ("Iran"), which was entered in a civil action arising from the brutal terrorist murder of an American teenager. In this proceeding, the Plaintiffs are seeking to enforce their judgment against funds belonging to Beneathco DMCC ("Beneathco"), pursuant to § 201 of the Terrorist Risk Insurance Act ("TRIA").

    Section 201 of TRIA is a remedial statute that provides unique enforcement remedies to persons (such as the Plaintiffs), who hold a judgment against foreign state sponsors of terrorism (such as Iran) arising from an act of terrorism.

1

As relevant here, TRIA § 201 operates as a statutory veil-piercing mechanism, allowing American terror victims like the Plaintiffs to satisfy their judgment against Iran from assets of agencies or instrumentalities of Iran that have been blocked by the United States under the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701-1702.

In January 2020, the United States blocked Beneathco's assets under IEEPA due to Beneathco's involvement in financing Iran's terrorist proxies. At the time of the blocking some $16 million of Beneathco's funds were invested with R.J. O'Brien Limited ("RJOL") and being traded in commodities through R.J. O'Brien & Associates, LLC in Chicago (RJO US). After the blocking, Beneathco's commodities positions were liquidated and the proceeds reverted to RJOL.

The Plaintiffs initiated this proceeding by serving RJOL with a citation to discover assets under 735 ILCS 5/2-1402. The citation was initially served by delivery to two RJOL officers and directors domiciled in Chicago, Brad Giemza and James Gabriele. Plaintiffs subsequently served the citation directly on RJOL's office in London, pursuant to the Hague Service Convention.

In an abundance of caution (in the unlikely event the Court concludes it lacks jurisdiction over RJOL) Plaintiffs also served a citation on RJOL's ultimate parent, JVMC Holdings Corp., which is headquartered in Chicago and has the legal authority and the practical ability to deliver the Beneathco assets to the Plaintiffs in satisfaction of their judgment. And as another cautionary measure, Plaintiffs served citations on Messrs. Giemza and Gabriele in Chicago, who may also have the legal authority and ability to deliver the Beneathco assets to Plaintiffs.

 In parallel, Plaintiffs have also sought limited post-judgment discovery from the Citation Respondents and from RJO US, which is directly relevant to this enforcement proceeding.

The Respondents have moved to quash Plaintiffs' citations, and their discovery requests. (DE 13-14, 28).

Regrettably, Respondents' motion papers systematically conflate and confuse Plaintiffs' judgment enforcement proceedings with the post-judgment discovery requests, frequently misrepresenting the enforcement proceedings as discovery proceedings and then invoking case law on discovery in purported support of their request to quash the enforcement proceedings.

In any event, as discussed below, the discovery will be needed only if the Court concludes the existing record is insufficient to order turnover of the Beneathco funds to the Plaintiffs.

Therefore, and for the reasons set forth below, Plaintiffs respectfully move for an Order -

1)      Pursuant 735 ILCS 5/2-1402 and TRIA § 201:

    a.  Directing R.J. O'Brien Limited to deliver the total sum of the blocked Beneathco funds to the Plaintiffs in satisfaction of their judgment; or, alternatively

    b.  Directing JVMC Holdings Corp. to deliver the total sum of the blocked Beneathco funds to the Plaintiffs in satisfaction of their judgment, or, alternatively

    c.  Directing Brad Giemza or James Gabriele to deliver the total sum of the blocked Beneathco funds to the Plaintiffs in satisfaction of their judgment;

2)      Alternatively, compelling the Citation Respondents and Respondent R.J. O'Brien & Associates, LLC to comply with the discovery requests that were served on them by the Plaintiffs (which are fully detailed below);

and,

3)      Denying in full the motions to quash (DE 13-14, 28) filed by the Citation Respondents and Respondent R.J. O'Brien & Associates, LLC.

## RELEVANT BACKGROUND

### A.   The Plaintiffs' Judgment

The Plaintiffs-Judgment Creditors ("Plaintiffs") are the family members and personal representative of the estate of the late Yitzhak Weinstock, a 19-year-old United States citizen who was machine-gunned to death by the Hamas terrorist organization. Plaintiffs brought a civil action against the Islamic Republic of Iran ("Iran") in the United States District Court for the Southern District of Florida, pursuant to the "terrorism exception" to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605A, based on Iran's extensive provision of material support to Hamas. *Weinstock v. Islamic Republic of Iran*, Civ. No. 17-23272 (S.D. Fla.).

Iran failed to appear, and on April 5, 2019, after examining Plaintiffs' liability and damages evidence – as mandated by FSIA § 1608(e)[1] – the federal court in the Southern District of Florida directed the entry of a final judgment against Iran and in favor of Plaintiffs, in the total amount of $26,291,000. *Weinstock v. Islamic Republic of Iran*, 2019 WL 1507255, (S.D. Fla. Apr. 5, 2019).

Plaintiffs' judgment was then registered in this Court pursuant to 28 U.S.C. § 1963, under the caption above. (DE 1). Plaintiffs' judgment therefore has "the same effect as a judgment of" this Court, "and may be enforced in like manner." 28 U.S.C. § 1963.

### B.   The Applicable Legal Framework

Rule 69 of the Federal Rules of Civil Procedure provides that: "The procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies." Fed. R. Civ. P. 69(a)(1). In this case, both Illinois and federal law are applicable.

---

[1] Section 1608(e) provides that a court may not enter a default judgment against a foreign state unless the plaintiff "establishes his claim or right to relief by evidence satisfactory to the court."

1. **Illinois Statutory and Case Law**

Illinois Supreme Court Rule 277 provides that a judgment creditor may commence judgment enforcement proceedings "against … any third party the judgment creditor believes has property of or is indebted to the judgment debtor." Ill. S. Ct. R. 277(a). "The supplementary proceeding shall be commenced by the service of a citation on the party against whom it is brought." *Id*. "A citation to discover assets is a supplementary proceeding governed by Section 2-1402 of the Illinois Code of Civil Procedure and Illinois Supreme Court Rule 277. The purpose of the citation proceeding is to discover assets or income of the debtor and compel 'the application of non-exempt assets or income discovered toward the payment of the amount due under the judgment.' 735 ILCS 5/2–1402(a)." *FirstMerit Bank v. Hosseini*, 2015 WL 4243484, at *4 (N.D. Ill. July 13, 2015).

Section 1402 "provides the court with a variety of tools that can be used to satisfy a judgment. For example, … it may order … non-parties to transfer funds to satisfy a judgment, and … it may summarily compel a … non-party to produce funds within their control." *Bank of Am., N.A. v. Veluchamy*, 643 F.3d 185, 188 (7th Cir. 2011).

Courts have repeatedly held that a court's powers under § 1402 "are to be broadly construed, providing the district court with the authority to enter a wide variety of orders to ensure that usable assets are located, seized, and—where appropriate—applied to the judgment." *Veluchamy*, 643 F.3d at 188 (emphasis added). Thus, "[s]upplementary proceedings are construed liberally to provide discovery of a debtor's assets and income and to vest the trial court with broad power to apply discovered property to satisfy a judgment." *City of Chicago v. Spielman*, 2023 WL 5955841, at *2 (N.D. Ill. July 31, 2023) (citation omitted) (emphasis added). *Cf. Motorola Sols., Inc. v. Hytera Commc'ns Corp. Ltd.*, 2021 WL 3077305, at *8 (N.D. Ill. Mar. 25, 2021) ("[T]he Court has broad authority under section 2-1402 of the Illinois Code to enter a variety [of] orders");

*Broaddus v. Shields*, 2012 WL 1144664, at *2 (N.D. Ill. Apr. 5, 2012) ("Section 2-1402 is to be construed liberally, not only providing for the discovery of a debtor's assets and income, but also vesting the courts with broad powers to compel the application of discovered assets or income to satisfy a judgment.") (citation omitted) (emphasis added).

Indeed, in an oft-quoted holding, the Seventh Circuit has emphasized that: "Proceedings to enforce judgments are meant to be swift, cheap, informal." *Resolution Trust Corp. v. Ruggiero*, 994 F.2d 1221, 1226 (7th Cir. 1993) (emphasis added)

### 2. Enforcement Against an Intangible Asset Under Illinois Law

It is black-letter law in Illinois that intangible assets, such as debts and financial deposits, have no geographic situs, and are subject to turnover to a judgment creditor whenever the court has personal jurisdiction over the third-party garnishee. This fact is highly salient in this proceeding, because the Plaintiffs are seeking to enforce their judgment against an intangible asset, namely: the sums owed to Beneathco DMCC by R.J. O'Brien Limited ("RJOL").

Under Illinois law, "[a] citation generally serves to restrain tangible property of the debtor located within Illinois and intangible property located anywhere, as long as the Illinois court has personal jurisdiction over the owner of the debt." *Leibovitch v. Islamic Republic of Iran*, 297 F. Supp. 3d 816, 832 (N.D. Ill. 2018) (emphasis added). *Cf. Gates v. Syrian Arab Republic*, 2013 WL 1337214, at *2–3 (N.D. Ill. Mar. 29, 2013) ("Accounts payable are not real property assets with corresponding in rem jurisdiction of their own … Under Illinois law, if the Illinois courts have personal jurisdiction over the *party* owning the debt, then Illinois courts have jurisdiction over accounts payable even if the accounts are 'located' in another district."); *Motorola Sols.*, 2021 WL 3077305, at *8 (N.D. Ill. Mar. 25, 2021) (same); *Park v. Townson & Alexander, Inc.*, 679 N.E.2d 107, 109 (1997) ("A debt … is intangible and jurisdiction does not depend on the situs of the debt"

and thus a foreign corporation over which the court has personal jurisdiction "may be garnished in our courts for a debt regardless of the situs of the debt.") (cleaned up).

Accordingly, if this Court has personal jurisdiction over RJOL (which, as shown below, it does) it has the authority to order RJOL to turnover the Beneathco funds to the Plaintiffs.

### 3. **TRIA**

As noted above, pursuant to Fed. R. Civ. P. 69(a)(1), state law governs judgment enforcement proceedings, along with any applicable federal statute. Section 201(a) of the Terrorism Risk Insurance Act of 2002 ("TRIA") [2] is applicable in this proceeding.

TRIA is a remedial statute, and "Congress's purpose in adopting the TRIA was to provide a comprehensive way for victims of terrorism to enforce their judgments." *United States v. All Funds on Deposit with R.J. O'Brien & Assocs.*, 892 F. Supp. 2d 1038, 1044 (N.D. Ill. 2012). Courts have observed that "TRIA's remedial purpose is plain from the face of the statute and is further supported by its legislative history." *Hausler v. JP Morgan Chase Bank, N.A.*, 740 F. Supp. 2d 525, 535–36 (S.D.N.Y. 2010). *Cf. Caballero v. Fuerzas Armadas Revolucionarias de Colombia*, 2021 WL 10429636, at *4 (S.D. Fla. Oct. 26, 2021) ("TRIA envisions expedient post-judgment collections proceedings so that TRIA judgment creditors and terror victims can receive adequate compensation for their significant injuries.").

Specifically, TRIA § 201(a) operates as a unique "statutory veil-piercing" mechanism. *Weinstein v. Islamic Republic of Iran*, 624 F. Supp. 2d 272, 275 (E.D.N.Y. 2009), *aff'd*, 609 F.3d 43 (2d Cir. 2010). Section 201(a) permits enforcement of judgments entered under the FSIA's

---

[2] Pub. L. 107–297, title II, § 201(a), (b), (d), Nov. 26, 2002, 116 Stat. 2337, 2339, as amended by Pub. L. 112–158, title V, § 502(e)(2), Aug. 10, 2012, 126 Stat. 1260.

terrorism exception, such as Plaintiffs' judgment against Iran, against the "blocked assets" of the judgment debtor and of any "agency or instrumentality" of the judgment debtor. Section 201(d)(2)(A) of TRIA defines a "blocked asset" as any asset seized or frozen by the United States under §§ 202 and 203 of the International Emergency Economic Powers Act ("IEEPA").

As discussed below, Beneathco's assets are subject to execution by Plaintiffs under TRIA.

**C.      Beneathco DMCC**

Beneathco DMCC ("Beneathco") is a company registered and based in Dubai[3] which trades in petroleum-related products. On January 23, 2020, the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC") blocked Beneathco's assets pursuant to Executive Order 13846. *See* 85 FR 17943-17944 (March 31, 2020). Executive Order 13846 was issued by the President pursuant to IEEPA. *See* 83 FR 38939-38949 (Aug. 7, 2018). Accordingly, Beneathco's assets constitute "blocked assets" within the meaning of TRIA § 201(d)(2)(A).

Beneathco is also an "agency or instrumentality" of Iran. An entity is an "agency or instru-mentality" of Iran, within the meaning of TRIA, if it <u>either</u> "provided material services to, on behalf of, or in support of" Iran, <u>or</u> "was a means through which a material function of [Iran] is accomplished." *Kirschenbaum v. 650 Fifth Ave. & Related Props.*, 830 F.3d 107, 135 (2d Cir. 2016), *abrogated on other grounds by Rubin v. Islamic Republic of Iran*, 583 U.S. 202 (2018).

Beneathco meets either and both of these tests. In an official statement published by OFAC on January 23, 2020, when it blocked Beneathco's assets, OFAC explained that it was taking action against Beneathco and three other "international petrochemical and petroleum companies that have collectively transferred the equivalent of hundreds of millions of dollars' worth of exports from

---

[3] The designation "DMCC" is an acronym for "Dubai Multi Commodities Centre," which is a free-trade zone in the United Arab Emirates. *See* https://dmcc.ae/about.

the National Iranian Oil Company ("NIOC"). OFAC further explained that NIOC is "an entity instrumental in Iran's petroleum and petrochemical industries, which helps to finance Iran's Islamic Revolutionary Guard Corps-Qods Force (IRGC-QF) and its terrorist proxies. Iran's petroleum and petrochemical industries are major sources of revenue for the Iranian regime and funds its malign activities throughout the Middle East." *See* United States Department of the Treasury publication, "*Treasury Targets International Network Supporting Iran's Petrochemical and Petroleum Industrie*s," (Jan. 23, 2020), available at home.treasury.gov/news/press-releases/sm885, attached as **Exhibit A**.

OFAC also determined that in 2019 Beneathco had "ordered the transfer of the equivalent of several million dollars to NIOC," and in 2018 Beneathco had "offered to assist NIOC in hiding the origin of Iranian products destined for the United Arab Emirates." *Id.*

These particularized factual findings made by OFAC clearly show that Beneathco both "provided material services to, on behalf of, or in support of" Iran and served as "a means through which a material function" of Iran was accomplished. *Kirschenbaum*, 830 F.3d at 135. Beneathco is therefore an "agency or an instrumentality" Iran within the meaning of TRIA.[4]

More proof of Beneathco's activities on behalf of Iran – and specifically Iran's Islamic Revolutionary Guard Corps-Qods Force ("IRGC-QF") – is found in the documents executed by Beneathco when it opened its account at R.J. O'Brien Limited ("RJOL"). Those documents identify "**Edman Nafrieh**" as the CEO of Beneathco. *See* RJOL account form, **Exhibit B**, at 6.

---

[4] It is well established that OFAC's factual findings are admissible under Fed. R. Evid. 803(8) to prove "agency or instrumentality" status under TRIA. *In re 650 Fifth Ave.*, 2013 WL 2451067, at *2, n.3 (S.D.N.Y. June 6, 2013). *Cf. Stansell v. Revolutionary Armed Forces of Colombia*, 2020 WL 5547919, at *11 (S.D. Fla. Mar. 23, 2020) *rev'd on other grounds* 45 F.4th 1340 (11th Cir. 2022) (OFAC's factual findings are admissible to prove "agency or instrumentality" status under TRIA).

OFAC has determined that Edman Nafrieh "oversaw a network of dozens of companies" that exported Iranian oil "in support of … the IRGC-QF." Nafrieh, who is an Iranian national, "received orders from high-ranking Iranian officials associated with the U.S.-designated Iranian Supreme Leader's Office to direct the network's oil smuggling operation profits to companies and bank accounts associated with … the IRGC-QF." *See* U.S. Department of the Treasury publication, "*Treasury Sanctions Oil Shipping Network Supporting IRGC-QF and Hizballah*," (Nov. 3, 2022), available at https://home.treasury.gov/news/press-releases/jy1076, attached as **Exhibit C**.

Thus, Beneathco is one of "a network of dozens of companies" overseen by Nafrieh, which smuggled oil revenues to Iran's IRGC-QF pursuant to "orders from high-ranking Iranian officials."

Moreover, in a "Defence" dated September 5, 2024, filed by RJOL in an English court ("Defence") RJOL admitted that Iranian government agent Edman Nafrieh was in fact authorized to execute trades for Beneathco via RJOL. *See* Defence in *Beneathco DMCC v. R.J. O'Brien Limited*, Claim No. CL-2024-000328 ("English Action"), attached as **Exhibit D**, at ¶ 7(a).

In sum: Beneathco is an "agency or instrumentality" of Iran within the meaning of TRIA, and its assets are subject to execution by Plaintiffs in satisfaction of their judgment against Iran.

**D.** **The Beneathco Funds on Deposit with RJOL**

RJOL has explained that its "principal business activity … is that of broker and clearer on the world's major futures and options and exchanges." Exhibit D at ¶ 4(b). However, RJOL is <u>not</u> a clearing member firm for the ICE Futures Europe (ICE) exchange, and it is therefore constrained to clear trades on the ICE exchange through its "US affiliate," R.J. O'Brien & Associates LLC. *Id* at ¶ 11. The Office of the Illinois Secretary of State shows that R.J. O'Brien & Associates LLC is headquartered at 222 S. Riverside Plaza, in Chicago. *See* **Exhibit E**.

In other words, RJOL conducts trades on the ICE exchange **<u>using its affiliate in Chicago</u>**.

In March-April 2019, RJOL and Beneathco entered into an agreement ("RJOL Agreement") and RJOL opened an account with RJOL. Exhibit D at ¶ 9. Thereafter, pursuant to the RJOL Agreement, Beneathco entered into derivative contracts on the ICE exchange. *Id*. at ¶ 11. Those trades were cleared by RJOL through R.J. O'Brien & Associates LLC in Chicago which, unlike RJOL, is a clearing member of the ICE exchange. *Id*. at ¶ 11.

As discussed above, OFAC blocked Beneathco's assets on January 23, 2020. On January 24, 2020 (after OFAC blocked its assets) Beneathco asked RJOL to liquidate its open positions. *Id*. at ¶ 34(a)-(c). On January 24, 2020 – in violation of the OFAC order issued the day before – RJOL liquidated Beneathco's positions, resulting in "a cash balance of US$16,501,515.22, which since 24 January 2020 has been held by RJOL." *Id*. The Plaintiffs are seeking turnover of this sum.

### E.     Plaintiffs' Citations

On October 22, 2024, at Plaintiffs' request, the Clerk of the Court issued Citations to Discover Assets addressed to each of the Citation Respondents, pursuant to 735 ILCS 5/2-1402. The citations were identical, except for the names of the addressees. *See* Declaration of Stacie R. Hartman ("Hartman Decl."), DE 14-3, at Exhibits A-E. (There is no dispute that those citations were delivered to the Citation Respondents, though the validity of the service is disputed in part).

On January 16, 2025, the Clerk of the Court issued a new citation addressed to RJOL. As discussed below, this citation was served on RJOL on January 20, 2025.

### F.     Plaintiffs' Discovery Requests

Plaintiffs have served limited discovery requests on the respondents. These requests, and their utility and relevance, are discussed in Part C below.

## ARGUMENT

For the reasons below, the Court should order RJOL to deliver the sum of the Beneathco funds to Plaintiffs, in satisfaction of their judgment. Alternatively, if the Court finds it lacks personal jurisdiction over RJOL, it should order Citation Respondents JVMC Holdings Corp., Brad Giemza or James Gabriele, to deliver those funds to Plaintiffs. Finally, to the extent that the Court finds gaps in the existing factual record that prevent it from granting the relief sought by Plaintiffs, it should order the respondents to comply with Plaintiffs' outstanding discovery requests.

**A.**    **RJOL Should Be Ordered to Deliver the Sum of the Beneathco Funds to Plaintiffs**

As demonstrated above, Beneathco's assistance to Iran, and its activities on behalf of Iran, render it an "agency or instrumentality" of Iran within the meaning of TRIA, Beneathco's assets are blocked pursuant to IEEPA, and the Plaintiffs are therefore entitled to enforce their judgment against Beneathco's assets pursuant to TRIA § 201.

As also shown above, when it cashed out Beneathco's commodities positions in 2020, RJOL received approximately $16.5 million dollars, which it indisputably owes to Beneathco. RJOL has acknowledged this debt, and stated that it makes no claim to these funds and has refused to release them to Beneathco only because they have been blocked by OFAC. Exhibit D at ¶ 2.[5]

The $16.5 million dollars owed by RJOL to Beneathco is clearly an intangible asset in the nature of a debt, or a financial deposit, on RJOL's books. Indeed, in a Report on Blocked Property it filed with OFAC in March 2020, R.J. O'Brien & Associates LLC explicitly confirmed that the

---

[5] Notably, the blocking does not bar a turnover order pursuant to TRIA. *Cf Harrison v. Republic of Sudan*, 802 F.3d 399, 409 (2d Cir. 2015) ("Once a district court determines that blocked assets are subject to the TRIA, those funds may be distributed without a license from OFAC."); *Caballero v. Fuerzas Armadas Revolucionarias de Colombia*, 2025 WL 486365, at *1 (S.D.N.Y. Feb. 12, 2025) ("A license from OFAC is not required for a garnishee to turn over to a judgment creditor, pursuant to a valid turnover order or judgment under TRIA, assets held by the garnishee that are blocked under OFAC sanctions regulations.").

sum owed to Beneathco is being "held <u>internally on the books</u>" of RJOL. **Exhibit F** at 2. Thus, RJOL is here analogous to a bank and the Beneathco funds are analogous to a bank deposit.

As shown above, under Illinois law intangible assets have no situs, and are subject to turnover if the court has personal jurisdiction over the garnishee. "A citation generally serves to restrain tangible property of the debtor located within Illinois and <u>intangible property located anywhere, as long as the Illinois court has personal jurisdiction over the owner of the debt</u>." *Leibovitch*, 297 F. Supp. 3d at 832 (emphasis added). *Cf. Gates*, 2013 WL 1337214, at *2–3 ("[I]f the Illinois courts have personal jurisdiction over the *party* owning the debt, then Illinois courts have jurisdiction over accounts payable even if the accounts are 'located' in another district."); *Motorola Sols.*, 2021 WL 3077305, at *8 (same); *Park*, 679 N.E.2d at 109 ("jurisdiction does not depend on the situs of the debt" and a foreign company within the court's personal jurisdiction "may be garnished in our courts for a debt regardless of the situs of the debt.") (cleaned up).

For their part, the Citation Respondents have completely failed to address this wall-to-wall case law regarding enforcement of judgments against intangible assets in Illinois.

Therefore, if this Court has personal jurisdiction over RJOL it can and should order RJOL to turnover the sum of the Beneathco funds to the Plaintiffs. As discussed below, this Court has specific personal jurisdiction over RJOL because it was validly served with a citation to discover assets issued by this court, and this proceeding "relates to" RJOL's activities in the State of Illinois.

### 1. RJOL Was Validly Served with a Citation

A court sitting in Illinois acquires personal jurisdiction over a non-party (subject to the due process clause) though the valid service of a citation to discover assets. *Midwest Com. Funding, LLC v. Kelly*, 204 N.E.3d 909, 916 (2022).

Illinois law provides that citations "shall be served and returned in the manner provided by rule for service, otherwise than by publication, of a notice of additional relief upon a party in default." Ill. Sup. Ct. R. 277(c). Illinois Rule 105 governs service of a notice of additional relief against defaulted parties, and permits such service "[b]y any method provided by law for service of summons either within or without this State." Ill. Sup. Ct. R. 105.

RJOL is a private corporation, and under Illinois law "[a] private corporation may be served (1) by leaving a copy of the process with … any officer or agent of the corporation found anywhere in the State; or (2) in any other manner now or hereafter permitted by law." 735 ILCS 5/2-204.

Plaintiffs served the citation directed to RJOL by having it delivered personally to both Messrs. Giemza and Gabriele in Illinois. RJOL asserts that service was invalid, because neither Giemza nor Gabriele is an "officer" or "agent" of RJOL within the meaning of 735 ILCS 5/2-204. (DE 13 at 10-11). RJOL argues that in order to effectuate service on it, Plaintiffs would be required to serve the citation pursuant to the Hague Service Convention. *Id*. at 11. According to RJOL, in the UK valid service pursuant to the Hague Service Convention service may "be accomplished by … a UK-based solicitor or process server." *Id*. (citing *White v. Ratcliff*e, 674 N.E.2d 906 (1996) and *Brown-Thomas v. Hynie*, 367 F. Supp. 3d 452, 464 (D.S.C. 2019)).

In order to moot the dispute over service, Plaintiffs asked the Clerk of the Court to issue a new citation directed to RJOL, identical to the first citation except for the return date. **Exhibit G**. Plaintiffs then had the new citation served on RJOL at its office in London on January 20, 2025, pursuant to the Hague Service Convention, exactly in the manner that RJOL demanded: via an English process server, instructed by an English solicitor. *See* **Declaration of Luigi Cobelli**.

Thus, Plaintiffs have indisputably effected valid service of the citation on RJOL, in exactly the manner that RJOL demanded. In fact, RJOL <u>accepted</u> that service. Cobelli Decl. at ¶ 4.

14

It is difficult to imagine how RJOL could possibly continue to challenge to service, but out of an abundance of caution Plaintiffs will address the validity of service on Giemza and Gabriele.

Service of the citation directed to RJOL by personal delivery to Giemza and Gabriele was valid because both are "officers" of RJOL. Mr. Giemza is the Chief Risk Officer of RJOL. *See* **Declaration of Edward Bennion-Pedley**, at ¶ 11. Obviously, a "Chief Risk Officer" is an "officer" within the meaning of 735 ILCS 5/2-204. Indeed, as Plaintiffs' expert explains, under English law, "the role of Chief Risk Officer is an important executive role with responsibility for overall management of the regulated entity's risk control and management." Bennion-Pedley Decl. at ¶ 12. These facts likely explain why Mr. Gabriele has submitted a declaration in support of the motions to quash, but Mr. Giemza has avoided doing so.

Additionally, under English law, company directors have the status of "officers." *Id.* at ¶¶ 8-10. Thus, for this reason too, Giemza and Gabriele are both "officers" RJOL, and service of the citation on RJOL via delivery to them was valid. When service of process is made on an officer of a foreign entity within the forum, the Hague Convention is irrelevant. *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 707 (1988) ("Where service on a domestic agent is valid and complete under both state law and the Due Process Clause, our inquiry ends and the Convention has no further implications."). *Cf. Wissmiller v. Lincoln Trail Motosports*, 552 N.E.2d 295, 299-300 (1990) ("if American Honda were R & D's agent for service of process, compliance with the procedures for service of process prescribed by the Hague Convention would not be necessary.").

## 2. <u>The Court Has Specific Personal Jurisdiction Over RJOL</u>

This Court can exercise specific personal jurisdiction over RJOL in this proceeding, and compel RJOL to pay to Plaintiffs the sum it owes to Beneatcho.[6]

---

[6] Plaintiffs do not assert that the Court has general personal jurisdiction over RJOL.

Specific jurisdiction looks to "the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (citation omitted). Specifically, the plaintiff's claims must "arise out of or relate to" the respondent's contacts with the forum. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (citation omitted). This does not require "a strict causal relationship between the defendant's in-state activity and the litigation" (*id*. at 362); rather, it is enough that there is "an affiliation between the forum and the underlying controversy," based on the respondent's forum-directed actions. *Id*. (citation omitted).

In other words, the respondent "must have deliberately reached into the forum state—that is, purposefully directed his activities at the state or purposefully availed himself of the privilege of conducting business in the state." *Crumpton v. Haemonetics Corp*., 595 F. Supp. 3d 687, 696 (N.D. Ill. 2022). Importantly here, "physical presence is not necessary for a defendant to have sufficient minimum contacts with a forum state. Indeed, we have noted that the purposeful-direction inquiry can appear in different guises." *Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 398 (7th Cir. 2020) (cleaned up).

If these two conditions are met – *i.e.*, if the respondent purposefully directed its activities at the state, and the plaintiff's claims arise from or relate to those activities – the court can exercise jurisdiction unless "doing so would be fundamentally unfair." *Crumpton*, 595 F. Supp. 3d at 696.

All of these conditions are satisfied here:

*First*, as discussed above, because RJOL is not a member of the ICE exchange it cleared Beneathco's trades on the ICE exchange through R.J. O'Brien & Associates, LLC, in Chicago. In other words, RJOL routed its trades in Beneathco's funds through Illinois. It is clear, therefore, that RJOL "deliberately reached into" Illinois, and "purposefully directed" its activities at Illinois and "purposefully availed itself of the privilege of conducting business" in Illinois. *Crumpton*, 595

F. Supp. 3d at 696. The Seventh Circuit has held, moreover, that directing even a single transaction into the forum can constitute "purposeful availment," since the question is not one of quantity but only whether the defendant "purposefully directed its conduct at Illinois." *NBA Properties, Inc. v. HANWJH*, 46 F.4th 614, 625 (7th Cir. 2022). All the more so here, given that RJOL directed over 16 million dollars of Beneathco trades though the State of Illinois.

*Second*, the "relatedness" test is also easily satisfied here. The instant turnover proceeding directly "relates to" RJOL's contacts with Illinois, because Plaintiffs seek to compel RJOL to deliver up the sum of the <u>very same Beneathco funds it was clearing through its affiliate in Chicago</u>.

Moreover, <u>RJOL itself</u> vigorously asserts in the English Action that the Beneathco funds <u>are directly related to, and arise from</u>, the trades it carried out in those funds <u>through Illinois</u>.

In the English Action, Beneathco seeks compel RJOL to release its funds. *See* Beneathco's Particulars of Claim, dated June 7, 2024, in the English Action, attached as **Exhibit H.** Among other things, Beneathco argues that under EU and UK "Blocking Regulations," RJOL cannot refuse to release the funds on the grounds they were blocked by OFAC. *Id*. at ¶¶ 19-26, 41-51.

In its Defence, RJOL disputes Beneathco's reliance on the EU and UK "Blocking Regulations," and argues that those Regulations only apply "where there is no nexus between the relevant transaction and/or conduct and US jurisdiction." Exhibit D at ¶ 25. *Cf. Id*. at ¶ 41 (same).

Further to this argument, RJOL asserts that:

> There is a nexus here because … the <u>sums held on behalf of Beneathco</u> represent the **proceeds of trades carried out by a US company** (RJO US).

*Id*. at ¶ 30(e)(iii) (emphasis added).

Thus, RJOL asserts that is not in violation of the "Blocking Regulations," <u>precisely because its trades in Beneathco's funds were cleared in Chicago</u> by R.J. O'Brien & Associates, LLC.[7]

The clear import of this statement (which is a party admission) is that the Beneathco funds at issue in this turnover proceeding are directly related to RJOL's purposeful direction of its activities into Illinois, and its purposeful availment of services in Illinois.

Since RJOL argues in the English Action that it is immune from the EU and UK "Blocking Regulations" precisely <u>because the Beneathco funds were traded by RJOL through its affiliate in Chicago</u> (the "nexus"), it should not be heard to argue in this Court that Plaintiffs' instant proceeding for turnover of those very funds does not "relate to" RJOL's Chicago-routed trades.

The Supreme Court has clarified that the "relate to" prong of specific jurisdiction does not require causation, and will be satisfied as long as there is "an affiliation between the forum and the underlying controversy," in light of the respondent's forum-directed actions. *Ford Motor*, 592 U.S. at 359. This test is easily satisfied in the circumstances presented here.[8]

*Third*, exercising jurisdiction over RJOL in this case would not be "fundamentally unfair." *Crumpton*, 595 F. Supp. 3d at 696. RJOL is a sophisticated international financial corporation, which rendered itself subject to personal jurisdiction in this Court by intentionally channeling millions of dollars of trades through its affiliate in Chicago. Moreover, it is now using those very same activities as a shield in the English Action. Nothing here even remotely implicates Due Process.

In sum: this Court has personal jurisdiction over RJOL.

---

[7] In the Defense, R.J. O'Brien & Associates, LLC is referred to as "RJO US." *Id.* at ¶ 11(d).

[8] The decision in *Ford Motor* clarifying the "relate to" test abrogates the decision in *Leibovitch v. Islamic Republic of Iran*, 188 F. Supp. 3d 734 (N.D. Ill. 2016), on which RJOL relies in support of its claim that Plaintiffs need to show that this proceeding "directly arises" from RJOL's Illinois-directed activities or that there is a "direct link" between them. DE 13 at 6.

**3. RJOL's Extraterritoriality Argument Is Baseless**

RJOL also argues that Illinois law governing enforcement of judgments does not have extraterritorial effect. DE 13 at 9. The identical argument was raised, analyzed and rejected in *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 2021 WL 3077305, *5-9 (N.D. Ill. Mar. 25, 2021). The Court should reject this argument for all the reasons detailed at length in *Motorola*.

**4. RJOL's Comity and Abstention Arguments Should Be Rejected**

RJOL also asserts a raft of repetitive and interrelated arguments, which it presents under the rubrics of "international comity" and "*Colorado River* abstention." DE 13 at 11-15. These arguments are meritless for numerous reasons:

***First***, "Federal courts have a virtually unflagging obligation to exercise the jurisdiction conferred on them by Congress … Therefore, our task in determining whether abstention is appropriate is not to find some substantial reason for the *exercise* of federal jurisdiction by the district court, but rather to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under Colorado River to justify the *surrender* of that jurisdiction." *AAR Int'l, Inc. v. Nimelias Enterprises S.A.*, 250 F.3d 510, 517–18 (7th Cir. 2001) (cleaned up).

A federal court may not abstain from the exercise of jurisdiction unless "the federal and foreign proceedings are parallel … If the actions are not parallel, the *Colorado River* doctrine does not apply. *Id*. at 518. "Suits are parallel if substantially the same parties are litigating substantially the same issues simultaneously in two fora. … The question is not whether the suits are formally symmetrical, but whether there is a substantial likelihood that the foreign litigation will dispose of all claims presented in the federal case." *Id*. (cleaned up).

The *Colorado River* doctrine cannot apply here, because this proceeding and the English Action are not parallel; the Plaintiffs are not parties to the English Action, and under English law,

it is impossible for Plaintiffs to have their judgment recognized or enforced in the UK. *See* **Affidavit of Steven Frederick Loble** at ¶¶ 8-26. Thus, there is no chance whatsoever that "the foreign litigation will dispose of all claims presented in the federal case." *AAR Int'l*, 250 F.3d at 518. Accordingly, "the *Colorado River* doctrine does not apply." *Id*.

*Second*, international comity is inapplicable where important interests of the United States would be undermined. "[T]he obligation of comity expires when the strong public policies of the forum are vitiated by the foreign act." *Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 937 (D.C. Cir. 1984). Barring Plaintiffs from enforcing their judgment because of the English Action would harm important U.S. interests. As discussed above, Plaintiffs' judgment was entered under the "terrorism exception" to the FSIA. "In enacting this provision, Congress sought to create a judicial forum for compensating the victims of terrorism, and in so doing to punish foreign states who have committed or sponsored such acts and deter them from doing so in the future." *Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 88–89 (D.C. Cir. 2002).

Moreover, "[c]oncerned with victims' inability to obtain redress in terrorism cases, Congress later amended the statute … With these provisions, Congress aimed to prevent state sponsors of terrorism … from escaping liability for their sins." *Han Kim v. Democratic People's Republic of Korea*, 774 F.3d 1044, 1048 (D.C. Cir. 2014).

Therefore, abstaining on grounds of international comity in this proceeding would be improper, because it would harm the important U.S. national interests in compensating the victims of terrorism, and punishing and deterring state sponsors of terrorism.

*Third*, TRIA § 201(a) operates "Notwithstanding any other provision of law." Abstention in this case on grounds of international comity would directly conflict with TRIA's "notwithstanding" clause. This clause has been held to override <u>even international treaties</u> to which the United

States is a party. *Weinstein v. Islamic Republic of Iran*, 609 F.3d 43, 53 (2d Cir. 2010). Since TRIA's "notwithstanding" clause trumps even a ratified treaty of the United States, it certainly overrides a mere discretionary doctrine, such as "international comity."

Indeed, this Court reached a substantively identical conclusion in *United States v. All Funds on Deposit with R.J. O'Brien & Assocs.*, 892 F. Supp. 2d 1038 (N.D. Ill. 2012) (Kennelly, D.J.). There, this Court rejected an attempt by the United States to invoke the doctrines of "prior exclusive jurisdiction and *in custodia legis*" to quash a TRIA enforcement proceeding. *Id*. at 1045. This Court ruled that those doctrines are overridden by TRIA's "notwithstanding" language:

> Section 201 of the TRIA … gives claimants the ability to execute or attach blocked assets notwithstanding any other provision of law. **The statute's reference to "any other provision of law" encompasses common law doctrines that counsel against two courts exercising jurisdiction over the same property**. As the Supreme Court has noted, courts generally have interpreted notwithstanding language to supersede all other laws, stating that a clearer statement is difficult to imagine."

*Id*. at 1046-47 (cleaned up) (emphasis added).

The Court should reach the identical conclusion in this case. The Citation Respondents here seek to quash Plaintiffs' TRIA enforcement proceeding, in favor of the English proceeding, on the basis of the doctrine of international comity. But as this Court expressly held, TRIA's notwithstanding provision "encompasses common law doctrines that counsel against two courts exercising jurisdiction over the same property." *Id*.

**Fourth**, RJOL complains that if this action proceeds it could be subject to a conflicting judgment in the English Action and the risk of paying the same funds twice, but has made no attempt to mitigate that purported risk. Under ILCS 5/2-1402(g), Beneathco is entitled to appear in this proceeding and litigate its rights to the funds, along with RJOL and the Plaintiffs. Therefore, as Plaintiffs' expert explains, RJOL could move to adjourn or dismiss the English Action in favor

of this proceeding, on forum non conveniens grounds, and has a reasonable chance of prevailing on such a motion, but it has failed to do so. *See* **Affidavit of Steven Frederick Loble** at ¶¶ 27-51.

Since RJOL has made no effort whatsoever to even *attempt* to avoid the purported risk of a double payment, it should not be heard to complain about that alleged risk.[9]

RJOL's complaint about possible double payment should also be rejected because it assumed such a risk when it elected to do business in multiple jurisdictions. The Second Circuit reached exactly this conclusion when faced with the same argument in an TRIA enforcement case:

> Clearstream argues that it would face "catastrophic double liability" if it were made to turn over the Assets in this proceeding and were then subjected to a restitution order for the right to payment in Luxembourg. But, as noted above, Clearstream has made the decision to engage in business activities in New York, and regularly engages in bond transactions in the United States on behalf of clients around the world. The possibility that it could be subject to competing suits in multiple countries is a risk inherent in this type of international financial arrangement. While recognizing, as we have here, that Clearstream has purposefully availed itself of the laws of New York, it would be unfair to allow it to evade jurisdiction in the state simply because it could be subject to double liability.

*Peterson v. Bank Markazi*, 121 F.4th 983, 1006–07 (2d Cir. 2024).

So too here, RJOL took on a client (Beneathco), and then elected to conduct trades for that client through its affiliate in Chicago. RJOL knew perfectly well that "it could be subject to competing suits in multiple countries … in this type of international financial arrangement." *Id.*

**Fifth**, RJOL's claim that "Plaintiffs can obtain … money from Beneathco itself" (DE 13 at 12) is false and cynical. In fact, as RJOL's English counsel knows, it is impossible for Plaintiffs to enforce their judgment in the UK. *See* Loble Affidavit at ¶¶ 8-26.

---

[9] The Court should also reject RJOL's wild doomsday claims about possible contempt sanctions. The dispute here is over an intangible debt, not chattels. There is no tug-of-war here over a tangible res.

RJOL's claim that Plaintiffs can "seek recovery from Iran wherever it may be found in the US" (DE 13 at 12) is equally meritless. Iran is not "found" anywhere in the United States, and it is virtually impossible to enforce judgments against Iran. "[A] number of practical, legal, and political obstacles have made it all but impossible for plaintiffs in these FSIA terrorism cases to enforce their default judgments against Iran." *In re Islamic Republic of Iran Terrorism Litig.*, 659 F. Supp. 2d 31, 49 (D.D.C. 2009). A garnishee cannot tell a judgment creditor to go look elsewhere.

**Sixth**, contrary to RJOL's representations, the English Action is not far along, and is nowhere near trial. A scheduling order issued in the English Action several weeks ago shows that the parties will be involved in discovery, disclosures and other preliminary matters during the next seven months, and a trial will begin no earlier than the end of October, 2025. **Exhibit I.**

**Seventh**, Plaintiffs' citation created a priority lien on the Beneathco funds. *Midwest Com. Funding, LLC v. Kelly*, 217 N.E.3d 985, 992 (2023) ("service of the citation begins the supplemental citation proceeding against the third party and establishes lien priority."). By contrast, the English court has not seized the funds. DE 14 at 6 ("the English High Court has not seized those funds."). Thus, this Court has <u>sole</u> legal custody of the funds.

***

Therefore, in light of all the above, the Court should order RJOL to deliver the sum of the Beneathco funds to the Plaintiffs.

**B.      Alternatively, JVMC Holdings, Brad Giemza, or James Gabriele Should Be Ordered to Deliver the Sum of the Beneathco Funds to the Plaintiffs**

As discussed above, Plaintiffs also served citations on JVMC Holdings Corp., Brad Giemza and James Gabriele. Those citations were served in Chicago, where JVMC Holdings Corp. is headquartered and Messrs. Giemza and Gabriele are domiciled, and therefore none of these citation

respondents have challenged this Court's personal jurisdiction over them. *Cf.* DE 14 at 12 (conceding that the Court has personal jurisdiction over JVMC, Giemza and Gabriele).

If the Court finds it does not have personal jurisdiction over RJOL, it should order JVMC Holdings Corp. to deliver the sum of the Beneathco funds to the Plaintiffs. Under Illinois law, a citation respondent who has <u>effective control over an asset</u>, can be ordered to deliver the asset to the judgment creditor. *See In re Barone*, 184 B.R. 747, 749 (N.D. Ill. 1995) ("the trustee of a standard land trust <u>retains sufficient control over the beneficial interest to direct its sale or transfer upon an order of the court</u>. Thus, the trustee is in control of the beneficial interest within the meaning of the supplementary proceedings statute, 735 ILCS 5/2–1402.") (emphasis added).

JVMC Holdings is the sole shareholder of RJOL's sole shareholder, and as Plaintiffs' English law expert explains, JVMC Holdings has the legal authority and ability to direct RJOL to deliver the sum of the Beneathco funds to the Plaintiffs. *See* Bennion-Pedley Decl. at ¶¶ 14-19.

Thus, the Court can and should issue a turnover order to JVMC Holdings, if it lacks jurisdiction over RJOL.

Alternatively, if the Court finds it cannot issue a turnover order to RJOL or JVMC Holdings, it should issue that order to Mr. Giemza and/or Mr. Gabriele. While it is true that they constitute a minority of RJOL's five-member board of directors, that does not mean they lack the authority to independently control the Beneathco funds. As Plaintiffs' English law expert explains, the director of an English company may be authorized by resolution or delegation to exercise powers independently, without the involvement of the other board members. *See* Bennion-Pedley Decl. at ¶ 23. In order to know whether Mr. Giemza and/or Mr. Gabriele enjoys such powers, they should be ordered to disclose whether such resolutions or delegations exist. *Id.* at ¶ 24.

Finally, in their motion to quash, JVMC Holdings, Giemza and Gabriele extensively re-hash, verbatim, the same arguments raised by RJOL (extraterritoriality, comity, abstention, etc.). DE 14, *passim*. Plaintiffs have already addressed and rebutted these arguments at length herein, and they should be rejected for all the reasons set forth above.

## C.      Alternatively, the Court Should Compel the Existing Discovery Requests

Plaintiffs respectfully believe that the Court can and should grant the turnover relief sought by Plaintiffs on the basis of the existing factual record.

However, if the Court finds factual gaps in the existing record that prevent it from granting turnover, Plaintiffs request that the Court order compliance with the discovery requests already served by Plaintiffs, as and to the extent necessary to complete the factual record.

Plaintiffs' discovery requests consist of the following:

a) The citations themselves requested oral examinations (i.e. depositions) of Messrs. Giemza and Gabriele, and of corporate representatives of RJOL and JVMC Holdings. *See* Hartman Decl. at Exhibits A-E.

   - This testimony would be relevant to any open factual questions regarding which these witnesses are likely to have knowledge.

b) Plaintiffs served subpoenas on Messrs. Giemza and Gabriele and JVMC Holdings, seeking (i) documents underlying the factual averments made by RJOL in its Defence, which are quoted, cited and relied upon by Plaintiffs in this Motion, and (ii) documents reflecting the authority of RJOL's directors. *See* Hartman Decl. at Exhibits F-H.

   - The documents in category (i) can fill any gaps in or clarify the facts stated in RJOL's Defence that are relied upon by Plaintiffs in this Motion.

   - The documents in category (ii) would be relevant to showing whether Giemza

and Gabriele have authority over the Beneathco funds, and whether they are officers of RJOL (this information could also be obtained via depositions).

c) Plaintiffs served a deposition subpoena on R.J. O'Brien & Associates, LLC, seeking testimony regarding RJOL's clearing of the Beneathco trades through R.J. O'Brien & Associates, LLC in Chicago. *See* DE 28 at Exhibit A.

- This testimony would be extremely relevant to the question of whether this Court has specific personal jurisdiction over RJOL.

Thus, if the Court finds any factual gaps that may be cured or clarified by the testimony and/or documents sought by Plaintiffs in the aforementioned discovery requests, the Court is respectfully requested to compel the production of such testimony and/or documents.

**WHEREFORE**, the instant motion should be granted, and the motions to quash denied.

March 13, 2025

Plaintiffs, by their attorney,

By:   /s/ Asher Perlin
Asher Perlin, Esq.
4600 Sheridan Street, Suite 303
Hollywood, Florida 33021
Tel. 786-687-0404
Email: asher@asherperlin.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 13, 2025, the foregoing was electronically filed with the Clerk of the Court using the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Asher Perlin
Asher Perlin, Esq.