**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **SHARON WEINSTOCK, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 23 C 2824** |
| | ) | |
| **ISLAMIC REPUBLIC OF IRAN,** | ) | |
| | ) | |
| **Defendant,** | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiffs, the family members of Yitzhak Weinstock and the personal

representative of his estate, obtained a judgment in another district against the Islamic

Republic of Iran pursuant to the "terrorism exception" of the Foreign Sovereign

Immunities Act, 28 U.S.C. § 1605A. *Weinstock v. Islamic Republic of Iran*, No. 17-

23272, 2019 WL 1507255 (S.D. Fla. Apr. 5, 2019). To attempt to collect the judgment,

the plaintiffs have registered the judgment in this Court and served citations to discover

assets to respondents R.J. O'Brien Ltd. (RJO UK), its parent company JVMC Holdings

Corp., and two of RJO UK's board members, James Gabriele and Brad Giemza, who

live in the United States. The plaintiffs also issued subpoenas to these respondents

and to R.J. O'Brien & Associates LLC (RJO US), an Illinois-based affiliate of RJO UK

allegedly involved in liquidating the positions of Beneathco DMCC—an alleged agent or

instrumentality of Iran.

The respondents have moved to quash the citations and the subpoenas. As

relevant to this opinion, RJO UK contends the Court lacks personal jurisdiction.  In response, the plaintiffs have moved for turnover of the assets sought and in the alternative to compel discovery.  This opinion solely addresses the plaintiffs' alternative motion to compel further jurisdictional discovery.

The Court may exercise personal jurisdiction over a non-resident entity if the three requirements of specific jurisdiction are met:  "(1) purposeful availment—the [entity] must have purposefully directed [its] activities at the forum state or purposefully availed [itself] of the privilege of conducting business in the forum; (2) relatedness—the alleged injury must arise out of or relate to the [entity]'s forum-related activities; and (3) fairness—the exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice."  *B.D. ex rel. Myer v. Samsung SDI Co.*, 91 F.4th 856, 861 (7th Cir. 2024) (per curiam).

When a party challenges personal jurisdiction, the plaintiffs must "[a]t a minimum . . . establish a colorable or *prima facie* showing of personal jurisdiction before discovery should be permitted."  *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 946 (7th Cir. 2000).  This is a low bar.  The plaintiffs need only advance "'proof to a reasonable probability' of the facts necessary to establish federal jurisdiction."  *Indag v. GmbH & Co. v. IMA S.P.A.*, 150 F. Supp. 3d 946, 971 (N.D. Ill. Dec. 9, 2015) (St. Eve, J.) (quoting *Anthony v. Sec. Pac. Fin. Servs., Inc.*, 75 F.3d 311, 316 (7th Cir. 1996)).  And because the respondents challenge personal jurisdiction on a motion to dismiss, the Court must also "resolve any factual disputes in favor of the plaintiff[s]."  *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012); *see also Indag*, 150 F. Supp. 3d at 972.

2

The plaintiffs have established a "colorable or *prima facie*" case of personal jurisdiction over RJO UK through its use of an Illinois-based affiliate, RJO US, in connection with the trades that produced the assets at issue. In support of jurisdiction, the plaintiffs cite RJO UK's statements in litigation before the High Court of Justice of England that "the sums held on behalf of Beneathco represent the proceeds of trades carried out by a US company (RJO US)" and that the relevant trades "were cleared by [RJO UK]'s US affiliate, . . . RJO US." Pls.' Mot. for Turnover, Mot. in the Alt. to Compel Discovery, & Opp'n to Respondents' Mot. to Quash, Ex. D ¶¶ 11(d), 30(e)(iii). These statements at least suggest that RJO UK purposefully chose to conduct the relevant trades through RJO US, as the trades were conducted on the ICE Futures Europe exchange and only RJO US—not RJO UK—is "an ICE exchange clearing member firm." *Id.* ¶ 11(d). Finally, the plaintiffs also cite findings from the United States Department of Treasury's Office of Foreign Assets Control (OFAC) that Beneathco materially assisted Iran by supplying it petroleum, indicating that Beneathco is an agent or instrumentality of Iran whose blocked assets can be used to satisfy the plaintiffs' judgment. *Id.* Exs. A–C; Terrorism Risk Insurance Act of 2002 § 201(a), 116 Stat. 2322, 2337 (codified at 28 U.S.C. § 1610 note).

Through these statements by RJO US and OFAC's findings, the plaintiffs have established "a reasonable probability" that discovery will provide further evidence that: (1) RJO UK purposefully availed itself of Illinois's jurisdiction through use of an Illinois-based affiliate to liquidate Beneathco's positions; (2) the plaintiffs' judgment enforcement action relates to this liquidation as the proceeds produced from these trades are blocked assets of Beneathco, an alleged agent or instrumentality of Iran; and

3

(3) RJO UK's choice to utilize an Illinois affiliate makes this Court's exertion of jurisdiction fair and just. In other words, the plaintiffs have established a "colorable or *prima facie*" case that this Court has specific personal jurisdiction over RJO UK.

RJO UK protests that its use of RJO US to clear Beneathco's trades was too "technical" to be a sufficient minimum contact with Illinois, as RJO US's involvement amounted to mere bookkeeping of already-made trades. *See* Consolidated Reply in Supp. of Mots. to Quash at 4. This response indicates the existence of a factual dispute that the Court cannot resolve on the current record.

The Court therefore grants the plaintiffs' motion to conduct limited jurisdictional discovery. Specifically, consistent with the subpoena the plaintiffs served on RJO US, the Court directs the citation respondents and RJO US to file, by June 12, 2025, one or more sworn declarations, along with supporting documents, sufficient to show with particularity: (1) "The actions taken and activities performed by [RJO US] on behalf of [RJO UK], for the benefit of [RJO UK], and/or pursuant to an agreement or arrangement with [RJO UK], in respect to the clearing and carrying out of the Beneathco trades," (2) "[RJO US's] role and involvement in generating 'the proceeds of trades' in Beneathco's investments that were 'carried out' by [RJO US]," and (3) "The titles and/or captions, dates of execution, and general subjects and purposes of the written instrument(s) . . . and/or verbal agreements, which established and governed the system, mechanism, and/or arrangement between [RJO US] and [RJO UK], pursuant to which [RJO US] carried out and cleared the Beneathco trades." *See* Subpoena to Testify at a Deposition in a Civ. Action to RJO US at 4, Dkt. No. 28, Ex. A. More generally, the respondents' and RJO US's submissions should be sufficient to describe,

4

in detail, how the transaction(s) involving the liquidation of Beneathco's positions occurred, from the beginning to the very end, and who (and what entities) did what. The case is set for a telephonic status hearing on June 16, 2025 at 9:00 a.m., using call-in number 650-479-3207, access code 2305-915-8729. The Court will determine, at that time, what further proceedings, if any (supplemental briefs, arguments, and/or a hearing) will be required and when they will be held.

Date: May 28, 2025

_____
MATTHEW F. KENNELLY
United States District Judge