# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SHARON WEINSTOCK, et al., | ) |
| | ) |
| Plaintiffs – Judgment Creditors, | ) Case No. 1:23-cv-02824 |
| v. | ) |
| | ) Honorable Matthew F. Kennelly |
| ISLAMIC REPUBLIC OF IRAN | ) |
| | ) |
| Defendant – Judgment Debtor, | ) |
| | ) |
| R.J. O'BRIEN LIMITED, JVMC HOLDINGS | ) |
| CORP., BRAD GIEMZA and JAMES GABRIELE, | ) |
| | ) |
| Citation Third Party Respondents. | ) |
| | ) |

## RESPONSE TO PLAINTIFFS' SUPPLEMENTAL BRIEFING REGARDING MOTIONS TO QUASH AND PLAINTIFF'S MOTION FOR TURNOVER

Citation Third Party Respondents R.J. O'Brien Limited ("RJO UK"), JVMC Holdings Corp., James Gabriele, and Brad Giemza ("Respondents") respond in opposition to Plaintiffs' supplemental briefing regarding their Motion for Turnover and Respondents' Motions to Quash.

With its Motion to Quash and discovery, RJO UK has established that this Court lacks jurisdiction over it. Plaintiffs' response is to continue making up facts and twisting the record. Their most recent target is a form customer agreement between RJO UK and RJO US ("Account Agreement," ECF 64-1), which they misconstrue to argue that all trades and funds are routed through Illinois and all trades are executed by RJO US, including Beneathco's. This is flatly wrong. The Beneathco trades were executed by RJO Dubai using the RJO UK account, at the European exchange and not in Illinois, and the funds generated by those trades were paid via Citibank in New York to the UK, where they remain, not in Illinois. The form customer agreement sent by RJO US is a standard document for any customer, regardless of location or the nature of the anticipated trade-flow, and is designed to cover a myriad of different potential scenarios. Plaintiffs' relying on selected quotes from the form instead of the facts specific to this case reveals the emptiness of their claims.

Nor does Plaintiffs' claim arise out of or relate to any tangential contact RJO UK made with RJO US in Illinois, including either the form customer agreement or the use of its clearing membership to clear trades at a European clearing house. Plaintiffs' claim to recover Beneathco's assets arises out of or relates to *Beneathco's activities*. In all events, exercising jurisdiction over RJO UK would not be fair, and there are manifest risks of contrary judicial outcomes and other international comity concerns with the ongoing UK Litigation.

The Citations on JVMC and Messrs. Gabriele and Giemza are improper. Plaintiffs effectively concede this point by failing to address these Respondents in their supplemental briefing.

1

The Citations should be quashed, turnover denied, and this proceeding dismissed. In the alternative, given the significant international comity risks, this Court should issue a stay pending the outcome of the UK Litigation.

## I. The Court Does Not Have Jurisdiction Over RJO UK.

In post-judgment proceedings, judgment creditors must prove that the court has "authority over the parties (personal jurisdiction), so that the court's decision will bind them." *Leibovitch v. Islamic Republic of Iran*, 188 F. Supp. 3d 734, 745 (N.D. Ill. 2016), *aff'd*, 852 F.3d 687 (7th Cir. 2017) ("*Leibovitch I*") (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999)). They must prove that (1) the citation-recipient's conduct satisfies the "minimum contacts" test; (2) the proceeding "arises out of the forum-related activity"; and (3) "maintenance of the suit [must] not offend traditional notions of fair play and substantial justice." *Kipp v. Ski Enter. Corp. of Wisc., Inc.*, 783 F.3d 695, 697 (7th Cir. 2015) (citing *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 800 (7th Cir. 2014); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). As set out in Respondents' Motions to Quash (ECF 13, 14) and supported by the jurisdictional discovery, this Court lacks jurisdiction over RJO UK.

### a. RJO UK does not have minimum contacts with Illinois.

A defendant has minimum contacts when his "conduct connects him with the forum in a meaningful way[,]" or, in other words, when "the defendant has 'purposefully directed' his actions at the forum." *Rogers v. City of Hobart, Indiana*, 996 F.3d 812, 819 (7th Cir. 2021) (citations omitted). That last part is critical; the relevant issue is the defendant's contacts <u>with the forum itself</u>, not with persons residing there. *Walden v. Fiore*, 571 U.S. 277, 285 (2014). A foreign defendant cannot be "bound to appear for merely random, fortuitous, or attenuated contacts with the forum state." *Comitz v. Rife*, 597 F. Supp. 3d 1235, 1240 (N.D. Ill. 2022) (citing *Curry v. Revolution Laboratories*, LLC, 949 F.3d 385, 398 (7th Cir. 2020)).

2

Plaintiffs have advanced a single (albeit ambiguous) theory for exercising jurisdiction over RJO UK – that from London, RJO UK routed, through Illinois, both Beneathco's trades on the European exchange and the funds Beneathco received as a result of those trades. ECF 31. This theory is disproven. The record establishes that Beneathco held an account with RJO UK, ███████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████. After the trades were executed, they were sent to be cleared by ICE Clear Europe, located in the UK. *Id.* at ¶ 7. ███████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████.

Neither the trades nor funds were routed through Illinois. A Dubai-based broker and a UK-based clearer executed and cleared the trades on a UK exchange and at a UK clearing house – entirely outside Illinois. *Id.* at ¶ 18. To finalize the back-office accounting of the trades, the UK clearer used the membership to the UK clearing house that belonged to an Illinois company. *Id.*

at ¶ 9.  RJO UK's arrangement to use RJO US's membership on the European exchange may be a contact *with an Illinois person*, but it is not a contact *with Illinois*.

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████ *See* ECF 65 at 11 (citing *U.S. Commodity Futures Trading Comm'n v. Wilson*, 27 F. Supp. 3d 517 (S.D.N.Y. 2014)).  Plaintiffs' reliance on *Wilson* is misplaced.  There, the court exercised jurisdiction because the defendant had "recurrent and purposeful bids on a contract traded on a New York exchange and cleared by a New York clearinghouse," all of which was at issue in that case.  *Id.* at 530.  Here, by contrast, after the trades were executed, RJO UK had *one* automated online contact with Illinois *through a European clearing house* to settle trades *on a European exchange in London*, and none of such contact is at issue.  Seventh Circuit precedent cautions against basing personal jurisdiction on such minimal online contacts.  *be2 LLC v. Ivanov*, 642 F.3d 555, 558–59 (7th Cir. 2011) ("Courts should be careful in resolving questions about personal jurisdiction involving online contacts[.] … [T]he constitutional requirement of minimum contacts is not satisfied simply because a few residents have registered accounts" on a website available in the state) (citations omitted).

When contact with Illinois is made online, the court must determine whether the defendant took "action purposefully designed to have an effect within Illinois."  *Rogers v. City of Hobart, Indiana*, 996 F.3d 812, 820 (7th Cir. 2021); *see also Matlin v. Spin Master Corp.*, 921 F.3d 701, 707 (7th Cir. 2019) (no jurisdiction because defendant's online activity did not specifically target Illinois).  RJO UK's activities neither targeted Illinois nor were designed to have an effect in Illinois.  All of the trading and clearing activity was accomplished by RJO Dubai in Dubai and RJO UK in the UK with ICE Futures Europe and ICE Clear Europe.  *See* ECF 57-1 (Russell Decl.)

4

at ¶ 18. If RJO UK's use of RJO US's membership sufficed to connect RJO UK with Illinois, every single trade RJO UK clears on ICE Futures Europe could give rise to personal jurisdiction over RJO UK in Illinois. Plaintiffs offer no authority supporting that extreme outcome.

b. **Plaintiffs rely on mischaracterizations to argue minimum contacts.**

Plaintiffs spill pages of ink repeatedly mischaracterizing the Account Agreement and Omnibus Addendum. ECF 64 at 3-12, 64-1. The unrefuted testimony of Christopher Bove and David Russell, which the Court must accept as true, refutes Plaintiffs' contentions. *See Leibovitch I*, 188 F. Supp. 3d at 745 (citation omitted).

First, ignoring the detailed, case-specific testimony of Bove and Russell, ███████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████. The declarations demonstrate the opposite: ███████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████. Beneathco has never had an account with RJO US or any other relationship with it. 57-2 (Bove Decl.) at ¶ 4.

The Agreement is a form contract that RJO US sends to *all* institutional customers, even affiliates. *See* ECF 64 at ¶ 2. The Agreement provides a range of options for trading that could be conducted, many of which are obviously inapplicable to the Beneathco trades. Provisions that Plaintiffs rely on – by their explicit terms – apply to trading *for RJO UK*, not *its customers (such as Beneathco)*. ████████████████████████████████████████████████████████████████

5

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

█████████. As the declarations establish, RJO US did not execute the Beneathco trades – that remains true no matter how many times Plaintiffs repeat otherwise by their mischaracterizations.

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████ *See* ECF 13-1 (Gabriele Decl.) at ¶ 10████████████████████████. That is the very money Plaintiffs seek to attach. ████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████. RJO UK assumed its own financial commitments, holding "cash collateral as margin for the transactions, [and] accounting to Beneathco for any profits and collecting from it for any losses." ECF 57-1 (Russell Decl.) at ¶ 4. The definitions from RJO UK's website, ECF 65 at 4, are entirely consistent with the relationship RJO UK has consistently maintained: it used the clearing membership of RJO US.

---

[1] *See* ECF 57-1 (Russell Decl.) at ¶ 8; *see also* ICE Futures Europe, *Rules and Regulations* at B.3.1(d) (Oct. 15, 2024) ("An applicant for access to trading on the ICE Platform as a Member must, at the time of its application and at all times thereafter: … satisfy the minimum financial standing requirements for the time being stipulated by the Directors in relation to the relevant category of membership, supporting its claim to do so by copies of its last three years of audited accounts"), *available at* https://www.ice.com/publicdocs/contractregs/06_SECTION_B.pdf.

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ are jurisdictionally irrelevant because they are for RJO as a US-registered entity and have nothing to do with *RJO UK's or Beneathco's contacts with Illinois*. *See contra* ECF 65 at 6–7. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

### c. The existence of the Account Agreement does not create jurisdiction.

Plaintiffs argue that the Account Agreement itself confers jurisdiction over RJO UK. ECF 65 at 10 (citing *R.J. O'Brien & Assocs., Inc. v. Newport Futures & Options Corp.*, No. 92 C 6382, 1993 WL 14685 (N.D. Ill. Jan. 22, 1993)). Contact with the forum only through a third party "do[es] not satisfy the requirements for personal jurisdiction." *Redd v. Amazon Web Servs., Inc.*, 673 F. Supp. 3d 943, 946 (N.D. Ill. 2023) (citing *Advanced Tactical*, 751 F.3d at 801; *Walden*, 571 U.S. at 284)) (quotation marks omitted). Even a contract with a resident of a forum, without more, is not enough to establish jurisdiction. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985). Plaintiffs can establish personal jurisdiction through RJO UK's contact with RJO US *only if* RJO UK "itself targets the forum through" RJO US. *Redd*, 673 F. Supp. 3d at 946. Such was the case in *R.J. O'Brien & Assocs., Inc. v. Newport Futures & Options Corp.*, where the defendant's predecessor in interest had contracted with RJO US to clear trades on its behalf *on the Chicago Mercantile Exchange*. The defendant in that case effectively conceded its jurisdictional arguments by asserting that it had previously transacted business in Chicago with RJO US but was not doing so "presently." 1993 WL 14685 at *5. That is not the case here. RJO UK did not use RJO US to target Illinois. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

████████████████████████████. An agent's conduct might give rise to personal jurisdiction over the principal, *see Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 590 (7th Cir. 2021), when the plaintiff proves that the agent undertook jurisdictionally relevant conduct under the principal's authority. *See Warciak v. Subway Restaurants, Inc.*, 949 F.3d 354, 357 (7th Cir. 2020); *Opp v. Wheaton Van Lines, Inc.*, 231 F.3d 1060, 1064 (7th Cir. 2000). This accords with the general rule that a plaintiff must establish jurisdiction over a defendant based on the *defendant's own contacts* with the forum. *See Burger King*, 471 U.S. at 478. Here, the record establishes that RJO US *took no actions* imputable to RJO UK, let alone actions related to Plaintiffs' underlying claims or Beneathco's funds. ECF 57-2 (Bove Decl.) at ¶ 14. All relevant "actions" were initiated by RJO UK and RJO Dubai. *Id.*

*Weller v. Flynn*, 312 F. Supp. 3d 706 (N.D. Ill. 2018), is instructive. The court considered whether conversations and an options contract between three defendants (including one resident defendant) conferred jurisdiction over two nonresident defendants. The court held that, even if the contracts had not been superseded, the contracts alone would not establish minimum contacts with Illinois because they "prompted no additional contacts between Defendants and Illinois[.]" *Id.* at 717. Similarly, in *Redd*, the court held that a third-party Illinois resident's contract to use the defendant's technology in Illinois was not enough to establish jurisdiction over the defendant "[w]ithout some indication that [the defendant] itself targeted Illinois." *Redd*, 673 F. Supp. 3d at 946–47. It is the defendant's purposeful contacts with the forum – not an agreement with an Illinois resident to be governed by Illinois law – that is "determinative for purposes of jurisdiction." *N. Tr. Co. v. Randolph C. Dillon, Inc.*, 558 F. Supp. 1118, 1122 (N.D. Ill. 1983).

## II. Plaintiffs' TRIA claim does not "arise out of or relate to" RJO UK's contacts.

Even if the Court were to find that RJO UK had minimum contacts with Illinois vis-à-vis the Beneathco trades, that alone would not establish jurisdiction to order RJO UK to turnover

8

Beneathco's money. Plaintiffs also must prove that their claims in this supplemental proceeding "arise out of or relate to" RJO UK's contacts with Illinois. As a matter of law, they do not.

A supplemental proceeding to execute on a money judgment is a summary proceeding. The judgment creditor asks the court to order turnover of assets belonging to the "judgment debtor" himself. 735 Ill. Comp. Stat. Ann. 5/2-1402. Illinois does not permit judgment creditors to initiate proceedings to hold new parties derivatively liable for someone else's judgment debts. *See Matos v. Richard A. Nellis, Inc.*, 101 F.3d 1193, 1195 (7th Cir. 1996); *see also Star Ins. Co. v. Risk Mktg. Grp. Inc.*, 561 F.3d 656, 660 (7th Cir. 2009). Yet that is what Plaintiffs are trying to accomplish here. They argue that Section 201(a) of TRIA allows them to demand that RJO UK turn over assets belonging, not to the judgment debtor (Islamic Republic of Iran), but to a third-party (Beneathco, a Dubai company). To do that, Plaintiffs must prove with evidence that Beneathco "is actually an agency or instrumentality" of Iran. *Stansell v. Revolutionary Armed Forces of Colombia*, 771 F.3d 713, 723 (11th Cir. 2014).

Supplemental proceedings to hold third parties derivatively liable for someone else's judgment debt, based on new facts and "entirely new theories of liability," are themselves "new action[s]," over which federal courts must have jurisdiction. *Peacock v. Thomas*, 516 U.S. 349, 358–359 (1996); *see Leibovitch I*, 188 F. Supp. 3d at 744–45. Plaintiffs allege a three-step theory of jurisdiction – that the Court has jurisdiction over RJO UK, which gives rise to jurisdiction over Beneathco's assets, which gives rise to jurisdiction to adjudicate their TRIA Section 201(a) claim to hold Beneathco liable for Iran's judgment debt. Plaintiffs' theory is wrong as a matter of law.

Plaintiffs' fundamental problem is that the "underlying controversy," *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (cleaned up), does not "'arise out of or relate to the defendant's contacts' with the forum[.]" *Ford Motor Co. v. Montana Eighth Judicial*

9

*District Court*, 592 U.S. 351, 359 (2021) (quoting *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 262 (2017)). The "underlying controversy" here is Plaintiffs' TRIA Section 201(a) claim – their effort to get the assets, not of the judgment debtor, but of an alleged agency or instrumentality of the judgment debtor[2] – which is a dispute between Plaintiffs and *Beneathco*, not *RJO UK*. Thus, it is *Beneathco*'s contacts, not just *RJO UK*'s, that Plaintiffs must establish.

Plaintiffs adduce no evidence about Beneathco's contacts with Illinois. Respondents' evidence shows that Beneathco contracted with RJO Dubai and RJO UK, not RJO US. ECF 57-2 (Bove Decl.) at ¶ 4. There is no evidence Beneathco knew RJO UK cleared trades on ICE Futures Europe using the membership of RJO US. Beneathco's connection to Illinois is nonexistent, just like that of Mrs. Pinkham, the Maine resident who was not subject to jurisdiction in Illinois even though, unbeknownst to her, her broker cleared its commodities futures accounts through Geldermann in Chicago. *See Geldermann, Inc. v. Pinkham*, 1986 WL 15107 (N.D. Ill. Dec. 19, 1986).

Plaintiffs do not even try to prove that Beneathco purposefully availed itself of the benefits and privileges of Illinois law. Instead, Plaintiffs contend that their TRIA Section 201(a) claim "arises out of or relates to" contacts that RJO UK had with Illinois. That contention defies logic.

---

[2] It bears repeating: this is an extraordinary judgment-enforcement case because Plaintiffs seek assets belonging to Beneathco, not Iran. This critical fact distinguishes two opinions Plaintiffs cite (ECF 65 at 11–12), addressing personal jurisdiction in ordinary post-judgment proceedings to get the assets of the judgment debtor. *See Fabric Selection, Inc. v. A&T Trading US Inc.*, 2021 WL 811371, *4–5 (E.D.N.Y. 2021) (the garnishee had branches in New York from which it sought the patronage of New York customers, *including the judgment debtor*); *Hyegate LLC v. Boghossian*, 2022 WL 1488171, *1 (S.D.N.Y. 2022) (the garnishee regularly engaged in transactions in New York that were substantially connected to *the funds of the judgment debtor*). This critical fact also distinguishes other opinions (ECF 42 at 10) addressing personal jurisdiction to compel discovery, not turnover, in post-judgment proceedings. *See Leibovitch v. Islamic Republic of Iran*, 852 F.3d 687, 689–90 (7th Cir. 2017); *see also SEC v. Knowles*, 87 F.3d 413, 316 (10th Cir. 1996) ("The issue here is a narrow one: whether the district court had personal jurisdiction over Knowles to enforce the administrative subpoenas duces tecum."); *Gucci Am., Inc. v. Li*, 768 F.3d 122 (2d Cir. 2014) ([S]pecific personal jurisdiction may permit the district court to order the Bank to comply with particular discovery demands.") (citing *Knowles*).

Plaintiffs' TRIA Section 201(a) claim against *Beneathco* cannot possibly arise out of or relate to anything *RJO UK* did. No element of Plaintiffs' TRIA Section 201(a) claim depends on any actions RJO UK took, in Illinois or elsewhere. RJO UK has neither the evidence nor the interest to defend Beneathco against Plaintiffs' effort to get Beneathco's assets. RJO UK is a stranger to Plaintiffs' dispute with Beneathco, so any contact RJO UK has with Illinois are constitutionally irrelevant to whether this Court has personal jurisdiction to adjudicate Plaintiffs' TRIA Section 201(a) claim. *See Leibovitch I*, 188 F. Supp. 3d at 751 ("[I]t is apparent that there is virtually no link between the in-state banking activities of these French and Japanese banks and Plaintiffs' claims arising from a terrorist attack that occurred in Israel with the support of the Iranian government"). RJO UK may be the *nominal* respondent in this proceeding, but RJO UK is not the *ultimate* defendant whose contacts necessarily drive the personal-jurisdiction inquiry. Beneathco, not RJO UK, is the party whose rights are in jeopardy. *See Walden*, 571 U.S. at 284 ("We have consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State.").

When a judgment creditor seeks to introduce evidence, make arguments, and hold a new party liable for a judgment debt in a turnover proceeding, the court must have personal jurisdiction over that new party, as the Fifth Circuit has held in a series of cases. *See Resolution Trust Corp. v. Smith*, 53 F.3d 72, 80 (5th Cir. 1995) ("It is even more clear that a party not even before the court cannot have its rights determined via the turnover proceeding. Thus, in this case, the district court erred in using the turnover proceeding to determine that the stock pledge was a fraudulent transfer and was therefore void."); *Maiz v. Virani*, 311 F.3d 334, 345 (5th Cir. 2002) ("We also note that Sanig and Tres Vidas not being properly before the district court raises troubling due process concerns."). "[C]onsistent with due process, a court may not … use the turnover statute to adjudicate

11

the rights and seize the assets of a third party who might not otherwise be amenable to jurisdiction in that court." *Bollore S.A. v. Imp. Warehouse, Inc.*, 448 F.3d 317, 324 (5th Cir. 2006). In *Dexia Credit Local v. Rogan*, 629 F.3d 612 (7th Cir. 2010), the Seventh Circuit agreed that due process requires personal jurisdiction over third parties whose property rights a judgment creditor seeks to adjudicate in a turnover proceeding, then upheld the outcome of the particular turnover proceeding on appeal because the district court had adjudicated only the rights of the actual judgment debtor, not any third parties. *Id.* at 632–633 (citing *Bollore*).

Plaintiffs' effort to adjudicate Beneathco's rights (1) based solely on RJO UK's alleged contact with Illinois and (2) without proving the Court's jurisdiction over Beneathco is the same *quasi in rem* theory the Supreme Court overruled in *Shaffer v. Heitner*, 433 U.S. 186 (1977):

> In the well-known case of *Harris v. Balk*, 198 U.S. 215 (1905), Epstein, a resident of Maryland, had a claim against Balk, a resident of North Carolina. Harris, another North Carolina resident, owed money to Balk. When Harris happened to visit Maryland, Epstein garnished his debt to Balk. Harris did not contest the debt to Balk and paid it to Epstein's North Carolina attorney. When Balk later sued Harris in North Carolina, this Court held that the Full Faith and Credit Clause, U.S. Const., Art. IV, s 1, required that Harris' payment to Epstein be treated as a discharge of his debt to Balk. This Court reasoned that the debt Harris owed Balk was an intangible form of property belonging to Balk, and that the location of that property traveled with the debtor. By obtaining personal jurisdiction over Harris, Epstein had "arrested" his debt to Balk, 198 U.S., at 223, and brought it into the Maryland court. Under the structure established by Pennoyer, Epstein was then entitled to proceed against that debt to vindicate his claim against Balk, even though Balk himself was not subject to the jurisdiction of a Maryland tribunal.

*Shaffer*, 433 U.S. at 200–201; *see also id.* at 212, n.39 (overruling *Harris*).

Here, Plaintiffs stand in Epstein's shoes; RJO UK in Harris's; and Beneathco in Balk's. Both cases present an uncommon situation where the property of the ultimate defendant (Beneathco/Balk) is allegedly within a court's jurisdiction for reasons beyond the ultimate defendant's doing. In *Harris*, Balk's property (the debt Harris owed) was garnished in Maryland because "Harris happened to visit Maryland." Here, Plaintiffs argue that Beneathco's property (the funds

in Beneathco's London account) is executable in Illinois because RJO UK allegedly established minimum contacts with Illinois. Such happenstance is not purposeful availment, which is why *Shaffer* overruled *Harris* and its assumption that a court can adjudicate the claims of a local plaintiff (Weinstocks/Epstein) against an out-of-state defendant (Beneathco/Balk) whenever someone who owes that defendant money (Harris/RJO UK) is subject to the court's jurisdiction.

The Due Process Clause "does not contemplate that a state may make binding a judgment … against an individual or corporate defendant with which the state has no contacts, ties, or relations." *Int'l Shoe*, 326 U.S., at 319. This Court cannot render a binding judgment on Plaintiffs' TRIA Section 201(a) claim unless Beneathco, the ultimate defendant, has contacts, ties, or relations to Illinois. RJO UK's contact with Illinois (if any) simply do not give rise to or relate to the Plaintiffs' effort to prove that Beneathco is an agency or instrumentality of Iran. Plaintiffs' turnover motion must be denied on due process grounds.

### III. This suit offends principles of justice due to international comity concerns.

Independently, the Court should quash the Citations and dismiss this proceeding on fairness grounds. *See Int'l Shoe*, 326 U.S. at 316; *see also Asahi Metal Indus. Co. v. Superior Ct. of Cal., Solano Cty.*, 480 U.S. 102, 115 (1987) (Courts should take care "when extending our notions of personal jurisdiction into the international field."). Fairness concerns are heightened in this case because the Court risks exercising jurisdiction over property that is subject to ongoing litigation in the UK. ECF 13 at 7–8; ECF 14 at 5–8. RJO UK also showed the risk of conflicting orders and contempt proceedings. ECF 13-2 (Warren-Smith Decl.) at ¶¶ 5–6. In light of these dangers, the balance of equities bends away from Plaintiffs; the exercise of jurisdiction would be unreasonable. ECF 13 at 7–8; ECF 14 at 5–8. Across all their briefing, Plaintiffs' only apparent response – that "RJO UK is a sophisticated international financial corporation," ECF 31 at 18 – is not actually responsive. Plaintiffs' silence on these issues only emphasizes that they cannot meet their burden

13

because this Court cannot fairly exercise jurisdiction while the UK Litigation proceeds.

Principles of comity, independently and as applied through the fairness element of personal jurisdiction, demand that US courts respect the interests of foreign sovereigns. *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522, 546 (1987). That is particularly true when foreign litigants could be subject to liability in their home jurisdictions. *See Leibovitch I*, 188 F. Supp. 3d at 758. The UK Litigation, which presents important questions of UK public law in relation to US law, poses a number of significant comity concerns.

First, the exercise of jurisdiction here risks conflicting outcomes. Courts decline to exercise jurisdiction under these circumstances. *See* ECF 13 at 15 (citing cases enjoining or staying duplicative proceedings); ECF 14 at 6–7 (collecting dismissals due to risk of conflicting outcomes over same property in multiple jurisdictions); *see also Detroit Int'l Bridge Co. v. Gov't of Canada*, 78 F. Supp. 3d 117, 122–23 (D.D.C. 2015) (staying on comity basis when court's decision "would risk inconsistent judgments between friendly nations"); *Hulley Enters. Ltd. v. Russian Fed'n*, 502 F. Supp. 3d 144, 155 (D.D.C. 2020) (ordering stay where Dutch proceedings risked "conflicting legal conclusions … which implicates interests in efficiency and international comity").

Second, an order by the UK Court directing RJO UK to release the freeze on Beneathco's account would affect the Court's exercise of jurisdiction in this case, because RJO UK would no longer "hold" Beneathco's funds, as Illinois law requires in citation proceedings. *Stonecrafters, Inc. v. Wholesale Life Ins. Brokerage, Inc.*, 393 Ill. App. 3d 951, 958, 915 N.E.2d 51, 56 (2009). Given the serious risk this outcome poses to this litigation, a stay, at the very least, would be appropriate. *See Stati v. Republic of Kazakhstan*, 199 F. Supp. 3d 179, 193 (D.D.C. 2016) (staying litigation pending decision by Swedish court given "the possibility that the [Swedish] proceeding could have a dramatic impact on the petition to confirm the arbitration award [in the US].").

Third, the UK Court may adjudicate the rights of Beneathco in a manner that contradicts the U.S. Treasury Department's blocking order. But any conflicts between the UK Court's adjudication of this issue and orders by the US Executive Branch about the status of Beneathco's funds better resolved through diplomatic channels by the US Executive Branch. *See Scalin v. Societe Nationale SNCF SA*, 8 F.4th 509, 514 (7th Cir. 2021) (international comity concerns would call for abstention because "[w]e are reluctant to authorize litigation that calls into question the relations between the United States and one of its allies"); *Callejo v. Bancomer, S.A.*, 764 F.2d 1101, 1126 (5th Cir. 1985) (affirming dismissal because "where competing sovereign interests are at stake, the delicate task of resolving disputes is best handled through diplomatic channels.").

Fourth, the UK Litigation is rapidly moving towards trial in October where the UK Court will be determining the application of English law to funds held in the UK by a UK resident. *See* ECF 31-8 (UK Particulars of Claim). US Courts should make every effort to avoid interfering with the courts of another nation, especially when the foreign court is adjudicating questions of its own laws. *See Detroit Int'l Bridge Co.*, 78 F. Supp. 3d at 120. Concerns of duplicative litigation, international comity, and fairness are too grave for this Court to exercise jurisdiction over RJO UK.

### IV. <u>Inclusion of JVMC, James Gabriele, and Brad Giemza in This Proceeding is Improper.</u>

Plaintiffs have said nothing in their brief about the Citations to JVMC, Gabriele, and Giemza – and there remains no basis for these Respondents' inclusion in this proceeding. *See generally* ECF 14; *see also* ECF 37 at 6–8; ECF 61 at 1.

### <u>CONCLUSION</u>

The Court should quash the Citations and dismiss this proceeding. In the alternative, given the international comity risks, RJO UK asks that the Court stay this case against it pending the outcome of the UK Litigation (still quashing the other citations).

**CERTIFICATE OF SERVICE**

I hereby certify that on July 7, 2025, the foregoing was electronically filed with the Clerk of the Court using the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Stacie R. Hartman*
Stacie R. Hartman