# **ATTACHMENT**

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHARON WEINSTOCK, et al., ) <br> ) <br>   Plaintiffs – Judgment Creditors, ) <br> v. ) <br> ) <br> ISLAMIC REPUBLIC OF IRAN ) <br> ) <br>   Defendant – Judgment Debtor, ) <br> ) <br> R.J. O'BRIEN LIMITED, JVMC HOLDINGS ) <br> CORP., BRAD GIEMZA and JAMES ) <br> GABRIELE, joined by R.J. O'BRIEN & ) <br> ASSOCIATES LLC, ) <br> ) <br>   Citation Third Party Respondents. ) | Case No. 1:23-cv-02824 <br><br> Honorable Matthew F. Kennelly |

**RESPONDENT RJO UK'S REPLY IN SUPPORT OF ITS
MOTION TO STAY TURNOVER PENDING APPEAL**

R.J. O'Brien Limited ("RJO UK") filed a notice of appeal and moved the Court to stay the turnover order pending appeal. In its Motion to Stay (ECF 80), RJO UK established that a stay is warranted in accordance with the four equitable factors. The Weinstocks disagree (ECF 88), yet their opposition papers make a key concession that supports RJO UK's request. RJO UK previously acknowledged its obligation to keep Beneathco's assets frozen pending appeal, and now the Weinstocks' attorney has averred that, if RJO UK turns over Beneathco's assets pending appeal, he will keep the money in his own account pending appeal. ECF 88 at 7–9. The question therefore seems to be only a question of whether Beneathco's money should remain where it is frozen pending appeal or be moved to counsel's account. For reasons discussed below, the Court should preserve the status quo.

In short, with an appeal already underway, there is no reasonable basis to order nearly immediate turnover. This case is long in the tooth: Plaintiffs waited over five years to file their

turnover motion, and this citation proceeding has been pending for over two years. Seeing as the court of appeals already set a briefing schedule, the time it will take the Seventh Circuit to consider this appeal is even shorter.

To avoid irreparable injury and enable appellate consideration of the serious and important questions this case raises, the Court should enter a stay pending appeal—such that, if the order is affirmed, the five-business-day deadline will start when RJO UK's appeals are exhausted.[1] However, if the Court declines to stay turnover pending appeal, the Court should at a minimum continue the current temporary stay until the Seventh Circuit rules on a motion to stay pending appeal—which RJO UK will file if necessary.

## ARGUMENT

### I. RJO UK Has a Substantial Case for Appeal.

The Weinstocks argue that RJO UK misstates the standard for a stay. ECF 88 at 2–3. Their assertion is not true, and their argument is a red herring. Since *Nken*, the Seventh Circuit continues to emphasize that a movant needs to make a "strong showing" that it is likely to succeed on the merits—*not* that it is more likely than not to prevail. *Ill. Republican Party v. Pritzker*, 973 F.3d 760, 762–63 (7th Cir. 2020); *cf. Nken v. Holder*, 556 U.S. 418 (2009). This does not mean proof by a preponderance of the evidence—that reversal is more likely than not—which would "spill too far into the ultimate merits for something designed to protect both the parties and the process while the case is pending." *Id.* at 763; *see also Mays v. Dart*, 974 F.3d 810, 822 (7th Cir. 2020) (requiring only a "strong showing"); *Whole Women's Health All. v. Rokita*, 13 F.4th 595, 597 (7th Cir. 2021)

---

[1] When the Weinstocks prepared a form judgment, RJO UK's counsel raised its objection with Plaintiffs' counsel and asked them to include it in the draft order for the Court: Because RJO UK intended to appeal, it was (and is) unnecessary and unreasonable for RJO UK to turn over Beneathco's assets immediately. *See* Counsels' Email Exchange (Aug. 11, 2025), attached hereto as Exhibit 1; Plaintiffs' Correspondence to the Court (Aug. 11, 2025), attached hereto as Exhibit 2. RJO UK asked Plaintiffs' counsel to advise the Court of its objection.

(a party has "made the 'strong showing' on the merits necessary to receive a stay").[2] RJO UK has not argued that a stay should issue simply because its appeal is not "frivolous." ECF 88 at 3. Rather, RJO UK argues that it has made a strong showing of success on appeal because the questions of law it intends to raise on appeal (1) are well supported by case law and first principles, (2) are important questions the Seventh Circuit has not yet decided, and (3) were given substantial attention by this Court in its thorough opinion on RJO UK's objections. RJO UK did not simply list issues for appeal or refuse to explain "how or why" RJO UK believes the Court erred. ECF 88 at 4. Rather, without re-litigating the merits of the arguments the Court rejected, RJO UK identified specific points in the Court's analysis where RJO UK thinks there is an error of law and identified arguments and authorities that RJO UK intends to make and cite on appeal in support of its positions. *See* ECF 80 at 2–4.[3]

RJO UK, then, has made a "strong showing" of likely success on appeal. The first factor set out in *Nken* weighs in favor of a stay pending appeal.

**II.  RJO UK Will Likely Be Irreparably Harmed Absent a Stay, and the Balance of Harms Favors a Stay Pending Appeal.**

The Weinstocks contend a stay is not warranted because "economic injury alone is not

---

[2] Other courts applying the likelihood-of-success standard after *Nken* have reached the same conclusion. *Simon v. City and County of San Francisco*, 135 F.4th 784, 815–16 (9th Cir. 2025) (likelihood of success standard requires movants establish only a "substantial case" on the merits, not that 'it is more likely than not that they will win on the merits.'"); *In re Revel AC, Inc.*, 802 F.3d 558, 568–69 (3d Cir. 2015) (movant need only show a "reasonable chance" of prevailing, not that victory is more likely than not); *Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35–36 (2d Cir. 2010) (the likelihood of success standard only requires a showing of "serious questions" going to the merits).

[3] It is telling that the Weinstocks' opposition to a stay pending appeal does not dispute all the objections RJO UK raised and relies on assertions and authorities that this Court did not cite or factor into its opinion. *See* ECF 88 at 4–5. The fact that an appellee makes new assertions and arguments establishes that (at least some of) of a movant's objections have a likelihood of success on appeal, or else the appellee would not need to come up with new points to support its position.

3

ordinarily enough." ECF 88 at 6. But RJO UK is not worried about an economic injury *alone*: it demonstrated a bona fide concern that Beneathco's money will not be returned if the judgment is reversed on appeal. That is a well-established irreparable injury in turnover cases. *See O'Brien*, 2023 WL 3652624, at *4; *see also* ECF 80 at 6–7.

The Weinstocks respond (with attorney assertions), not so much to dispute RJO UK's objection, but to offer a different approach—move the funds to their lawyer's own IOLTA account pending appeal. *See* ECF 88 at 7–9. In other words, the Weinstocks concede the assets should be escrowed pending appeal and, in essence, tee up the question of where the money should be escrowed—in Beneathco's frozen accounts (the status quo) or the Weinstocks' lawyer's IOLTA account? For several reasons, the better answer is that the Court should preserve the status quo.

First, notwithstanding its objections to turnover, RJO UK has continuously complied with its legal obligations—including OFAC's order and this Court's citations—by keeping Beneathco's assets frozen in interest-bearing accounts. RJO UK faces legal consequences if it fails to comply with those obligations. The Weinstocks' attorney, by contrast, does not have a legal duty vis-à-vis the funds.

Second, the Weinstocks' arguments for why Beneathco's money should be held in their lawyer's account instead of with RJO UK are incorrect and not substantial. Notably, they are wrong that RJO UK cannot be injured by turning over Beneathco's money. ECF 88 at 7. The injury is immediate and substantial.

RJO UK is primarily regulated by the United Kingdom's Financial Conduct Authority ("FCA"). The FCA's rules require regulated firms in the United Kingdom to both protect their client's funds and to maintain a robust amount of regulatory capital in order to do business in the financial services sector. Its rules would require RJO UK to pay the amount ordered in this case

4

from its *own* funds, within one day of after RJO UK complies with the turnover order. *See* CASS 7.15.29R(1).[4] That is because the client segregated fund accounts would be in a shortfall if RJO UK were to withdraw Beneathco's funds. Thus, absent a stay, compliance with the turnover order will thus immediately deprive RJO UK of its own assets, totaling more than $17 million. Firms may seek a waiver or derogation – but the timing and success of both is entirely unknowable, and the process for seeking either is well beyond when the payment would be required. If RJO UK cannot obtain a waiver or derogation, the impact of paying such a significant amount is likely to be profound and irreparable to a firm the size of RJO UK. This includes the impact on RJO UK's liquidity position and its impact on the regulatory capital position it is required to maintain as part of its permissions to continue trading.

      The Weinstocks cite *Chao v. Current Development Corporation*, where the court initially stayed an order distributing payouts from a constructive trust pending appeal, and then reversed its decision several months later. *Chao v. Current Development Corp.*, 2008 WL 4681976, at *1–2 (N.D. Ill. May 2, 2008). The court concluded that the "*possible* harm" that the defendants would not return the funds was not "irreparable," and that the plaintiffs would not "defy a court order" to refund the money. *Id.* at *6 (emphasis in original). Here, and unlike the defendants in *Chao*, RJO UK faces more than a risk that the assets will disperse if the court does not stay the turnover order. Instead, RJO UK would suffer an immediate and continuing injury, because to comply with UK law it must always keep all the assets held in client segregated funds accounts available. RJO UK will have to replenish its account in the amount turned over for the pendency of the appeal. This is certain and immediate harm, not merely "*possible* harm." *Id.*

---

[4] *Available at* https://www.handbook.fca.org.uk/handbook/CASS/7/15.html (last accessed Aug. 20, 2025) (a firm must ensure that "any shortfall is paid into a client bank account by the close of business on the day that the reconciliation [identifying the shortfall[ is performed").

In addition, the court in *Chao* only dissolved the stay after concluding that it "would have the authority to compel return of the money." *Id.* In this case, it is unclear that the Weinstocks would be under any obligation to keep the assets frozen. RJO UK, by contrast, is subject to two orders freezing the assets. For this reason, if the assets are going to "stay put" somewhere—either with RJO UK or in an escrow account created by the Weinstocks' counsel—the balance of harms weighs in favor of keeping it with RJO UK.

Next, the Weinstocks speculate that RJO UK seeks a stay to enable the UK Court to "seize" the funds. ECF 88 at 9–11. That is demonstrably false. RJO UK specifically offered to provide this Court with status reports to keep the Court apprised of the UK Litigation. *See* ECF 80 at 7, n.2. A stay pending appeal is not a ploy or a dodge. The funds are "in no jeopardy[.]" *In re Netia Holdings S.A.*, 278 B.R. 344, 357 (Bankr. S.D.N.Y. 2002).

Finally, after falsely accusing RJO UK of speculating about injuries, the Weinstocks themselves engage in rank speculation by theorizing that the OFAC might unfreeze Beneathco's assets during appeal. They cite nothing that even remotely suggests that OFAC might unfreeze Beneathco's assets, let alone unfreeze them in the near future. What's more, if the assets were unfrozen, that would undermine the Weinstocks' entire theory for turnover. In other words, the risk here is the risk that the Weinstocks' collection efforts will become unfounded; that is not the sort of injury that weighs against a stay pending appeal.

The Weinstocks also cite *Doe #1 v. Deposit Guarantee Fund*, which concluded that the plaintiffs there could not recover blocked funds under TRIA after OFAC lifted the blocking order covering those funds. 2025 WL 706502, at *2–4 (2d Cir. Mar. 5, 2025). This case is inapposite for two reasons. First, if the assets are unblocked during the appeal process, the Weinstocks can no longer make the threshold showing under law that they are entitled to the assets. *Id.* at *3 (noting

6

that "to attach property pursuant to TRIA, a party must show, among other things, that the property at issue is a blocked asset."). If OFAC de-lists Beneathco, the Weinstocks would not be legally entitled to the funds as a threshold matter, and they cannot claim to be harmed by not receiving assets to which they are not legally entitled.

Second, the fact that the plaintiffs in *Doe #1* had not received the funds was only one basis for the court's decision. The court "note[d]" that "at the time of the delisting and unblocking of [the bank]'s assets…plaintiffs had not obtained the funds that were the subject of the writ of execution." *Id.* at *4. But the court "also" noted that the plaintiffs "did not have a pending writ of execution because, by then, the district court had already vacated it." *Id.* Here, Plaintiffs have a turnover order in place; RJO UK asks only that this court *stay* the order pending appeal, not vacate it.

For these reasons, the irreparable injury and balance-of-harms factors bend in favor of a stay.

### III. The Public Interest Supports a Stay.

A stay is warranted in this case given the significant public interest in adjudicating constitutional rights, including Due Process rights, and protecting international comity. ECF 80 at 8–9. Plaintiffs disregard such interests, instead arguing that the public interest in compensating victims of terrorism weighs against a stay. ECF 88 at 13–15. The interest in compensating victims relates to ultimate payment, not to immediate payment, particularly in the face of an appeal. None of the cases cited by Plaintiffs weigh the public interests at stake here—specifically, the risks and uncertainty foreign companies face in determining what amount of contact with Illinois subjects them to the Northern District's jurisdiction. *Id.* Nor do Plaintiffs address the interest in issues of personal jurisdiction that are heightened in light of the Supreme Court's recent decision in *Fuld*,

7

which the Seventh Circuit has yet to interpret. ECF 80 at 8. Plaintiffs and their decedents have suffered a truly horrific tragedy, but that cannot cloud the Court's judgment in considering the protection of constitutional rights and the serious risk of international conflict with the English High Court. Consequently, the public-interest factor favors a stay pending appeal.

## CONCLUSION

The Court should stay the turnover order pending RJO UK's appeal of the order. In the alternative, the Court should continue the current stay pending the Seventh Circuit's consideration of RJO UK's forthcoming motion for stay pending appeal.

Respectfully Submitted,

Dated: August 21, 2025

*/s/ Stacie R. Hartman*
Stacie R. Hartman (IL Bar No. 6237265)
Maria K. O'Keeffe (IL Bar No. 6342654)
Morgan, Lewis & Bockius LLP
110 North Wacker Drive, Suite 2800
Chicago, IL 60606
(312) 324-1000
stacie.hartman@morganlewis.com
maria.okeeffe@morganlewis.com

Bryan Killian (*pro hac vice*)
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 739-3000
bryan.killian@morganlewis.com

*Counsel for Citation Third-Party Respondent*

**CERTIFICATE OF SERVICE**

    I hereby certify that on August 21, 2025, the foregoing was electronically filed with the Clerk of the Court using the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Stacie R. Hartman*
Stacie R. Hartman
